IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                              :        CASE NO. 05-06118

C.H. PROPERTIES, INC.,                              :        CHAPTER 11   **FILED & ENTERED**

    Debtor                                          :        JAN 1 3 2006

_____ :

**U.S. BANKRUPTCY COURT
SAN JUAN, PUERTO RICO**

### OPINION AND ORDER

Before the court is debtor's motion for leave to assume lease contract and the oppositions thereto by Compañia de Parques Nacionales de Puerto Rico and Comité de Vecinos de Isla Verde.  For the reasons set forth below, this court will abstain from addressing the debtor's request to assume the lease contract until the decision of the Superior Court of Puerto Rico, holding the lease contract invalid, is final and firm in accordance with the laws of the Commonwealth of Puerto Rico.

### Background

At the hearing held on November 8, 2005, the parties agreed that the facts set forth in debtor's motion to assume the lease contract were uncontested; accordingly, they are set forth below and adopted as this court's findings of fact.

1. On July 1, 2005, debtor filed its voluntary petition for relief under the provisions of 11 U.S.C. § 1100 *et seq.* and as of that date has been managing its affairs as a debtor in possession pursuant to 11 U.S.C. § 1107.

2. On May 15, 1965, the Ports Authority of Puerto Rico ("Ports Authority"), the Recreation Development Company of Puerto Rico ("RDC"), and Compañía de Parques Nacionales ("CPN") executed deed number 16 before notary public Rafael Rivera Genaro for the segregation and sale by the Ports Authority to RDC of the properties described as

AO 72
(Rev. 8/82)

follows in the Spanish language:

(a)  URBANA: Predio de terreno de forma irregular radicado en el Barrio Cangrejo Arriba de Carolina, propiedad de la Compañía de Fomento Recreativo de Puerto Rico, con una cabida superficial de 45 cuerdas con 3,984 diez milésimas de otra y en lindes: por el Norte, con el Océano Atlántico y con la antigua Carretera Estatal número 187 (la cual radica dentro del predio); por el Sur, con la carretera de Isla Verde; y por el Oeste con terrenos de la Compañía de Fomento Recreativo.

Inscrita al tomo 720, folio 72, finca número 36,908, Sección I de Carolina.

(b)  URBANA: Predio de terreno el cual constituye parte de la antigua Carretera Estatal número 187, radicado en el Barrio Cangrejo Arriba de Caroline, con una cabida superficial de 5.4686 cuerdas; en lindes por el Norte, con terrenos de la Autoridad de Puertos de Puerto Rico; por el Sur, con terrenos de la Autoridad de Puertos de Puerto Rico y la Carretera de Isla Verde; y por el Este, con la Carretera de Isla Verde.

Inscrita al tomo 720, folio 82, fina número 36,909, Sección I de Carolina.

3.  The segregation and sale of the above described properties were approved by the Planning Board of Puerto Rico through its Report Number 63-p-2025, project number 62-18378, dated April 3, 1963.

4.  The segregation and sale contemplated the construction of buildings on the properties, with the exception of that portion to the South of the Limit Line, as described in the deed.

5.  On October 11, 1990, RDC as landlord and the Municipality of Carolina ("Municipality") executed a lease and usufruct contract as to the two properties described above for a period of 10 years from the approval of the contract by the Governor of Puerto Rico, with

2

AO 72
(Rev. 8/82)

an option for two additional 10-year periods.  This contract was renewed in the year 2000.

6. On June 2, 1994, RDC issued Resolution Number 94-05, authorizing its Executive Director to lease parcel (b) above to the former Hotel Holiday Inn Crowne Plaza, now Courtyard by Marriott, for development of a private project consisting of a tower with hotel, convention hall, tennis courts and parking, among others, to which the Municipality and the Tourism Company of Puerto Rico agreed.

7. Consequently, on March 11, 1996, RDC as landlord and Desarrollos Hoteleros De Carolina, Inc. ("Desarrollos Hoteleros") as lessee, and the Municipality and the Department of Natural Resources of the Commonwealth of Puerto Rico (the "Department"), as consenting parties to the termination of the lease and usufruct agreement therewith, executed a lease agreement for a portion of property (a) above, described as follows in the Spanish language:

> (b) URBANA:  Predio de terreno radicado en el Barrio Cangrejo Arriba del Municipio de Carolina, con una cabida superficial de diecinueve mil seiscientos cincuenta y uno punto novecientos setenta y ocho (19,651.978) metros cuadrados; equivalentes a cinco (5.00) cuerdas y en lindes por el NORTE, con la zona marítima-terrestre que la separa del Océano Atlántico; por el ESTE, con la finca matriz de la cual se segrega, propiedad de la Compañía de Fomento Recreativo; por el SUR, con la Avenida Boca de Cangrejos (Carretera Estatal número ciento ochenta y siete [187]) y parcela de la Autoridad de Acueductos y Alcantarillados; y por el OESTE, con terrenos de H.I. Isla Verde, Inc.
>
> Inscrita al tomo 873, folio 276, finca número 39,831, Sección I de Carolina.

8. The property described in the preceding paragraph is the result of a segregation made pursuant to deed number 9 executed in San Juan, Puerto Rico on the 10th day of August, 1999, before notary public Etienne Totti del Toro.

3

AO 72
(Rev. 8/82)

9. The lease to Desarrollos Hoteleros was for the development, construction and operation of a first-class hotel, and such other activities as are customary in the hotel industry and in connection therewith, including without limitation, at Desarrollos Hoteleros' sole discretion, operation of a casino, and/or with the prior written consent of RDC, which was not to be unreasonably withheld or delayed, for any other lawful purpose.

10. The Secretary of Natural Environmental Resources appeared in the lease to Desarrollos Hoteleros since the demised premises are adjacent to the maritime terrestial zone, for the purpose of approving and consenting to the terms and conditions thereof, pursuant to Law Number 38 of September 27, 1949, as amended, and Law Number 23 of June 20, 1972, as amended, both as interpreted in Opinion Number 2 of January 16, 1990, issued by the Secretary of Justice of Puerto Rico, and pursuant to his opinion of May 10, 1995.

11. As per the terms and conditions of an Assignment of Lease dated August 9, 1999, bearing affidavit number 19,365 of notary public Arline V. Bauzá Figueroa, Desarrollos Hoteleros assigned, transferred, and conveyed to Sunshine Isle Inn, LLC ("Sunshine"), a limited liability company organized under the laws of Delaware, all of its rights, title, interests, and privileges in and to the lease agreement regarding the property described in paragraph 7 above, with the consent and participation of all interested and necessary parties.

12. On November 19, 1999, deed number 6, of amendment, conversion, and ratification of agreement of lease to public instrument, before notary public Ricardo E.

4

AO 72
(Rev. 8/82)

Soto Miranda, was executed by RDC as landlord, Sunshine as tenant, and the Municipality and the Department, regarding the property described in paragraph 7 above, for the purpose of converting the lease agreement to a public instrument and petitionoing the Registrar of the Property to record the same.

13. Deed number 6 sets forth the terms of the lease and the rent to be paid pursuant thereto, for the purpose of giving notice thereof and not to supersede or diminish, add to, or change any of its terms or conditions, except as otherwise set forth in the deed.

14. Deed Number 6 is recorded at folio 277 over of book 873, property number 38,831, second recording, Section I of Carolina.

15. On August 21, 2001, Sunshine as seller, and HR Properties, Inc. ("HR") as purchaser, entered into a Sale-Purchase Agreement whereby Sunshine granted HR an option to purchase the leasehold relative to the property described in paragraph 7 above, for $6,500,000.00.

16. On October 10, 2001, RDC  provided its consent to the assignment of Sunshine's interest in the stated premises to HR, provided that HR in the deed of assignment, assumed and agreed to discharge in accordance to the terms of the lease agreement, and upon closing so, HR, for all purposes, would be deemed to be the tenant under the lease agreement.

17. On October 19, 2001, the Municipality entered into an Endorsement Agreement, with HR, whereby the Municipality endorsed HR's development, construction, and operation of a condo-hotel project on the property described in

5

AO 72
(Rev. 8/82)

paragraph 7 above.  All the conditions of the endorsement have been met.

18. On January 2, 2002, joint resolution number 1 was enacted to order CPN to convey to the Municipality for $1.00, the two parcels described in paragraph 2 above, which according to the resolution, terminated the lease and usufruct agreement of the two parcels to the Municipality as a result of confusion of rights.  The resolution specifically states that all duly executed contract between RDC or CPN and any party as to the premises, prior to the date thereof, would remain in full force and effect, the Municipality subrogating itself in lieu of CPN or RDC.

19. On August 5, 2002, with the consent of CPN and the Municipality, Sunshine assigned the lease in favor of Debtor, as per deed number 72, executed in San Juan, Puerto Rico, before notary public Omar Menéndez Saurí, recorded at folio 174, book 948, Section I of Carolina.[1]

20. On August 5, 2002, Debtor executed deed of constitution of first mortgage on the leasehold relative to the property described in paragraph 7 above, in favor of Firstbank Puerto Rico, in San Juan, Puerto Rico, before notary public Michel Rachid Piñeiro, to guarantee a loan for $7,425,000.00 for the development of the condo-hotel project.

21. Debtor has a leasehold interest in the property described in paragraph 7 above with a market value of $23,350,000.00, considering its intended development of the condo-hotel project.

---

[1]Although questions about the accuracy of this factual allegation were raised at the hearing on November 8, 2005, debtor submitted a copy of Deed No. 72 on November 23, 2005 to establish its veracity.

6

AO 72
(Rev. 8/82)

22. On May 21, 2003, CPN as assignor, and the Municipality as assignee, executed deed number 20 before notary public Yanellis Marrero Figueroa, formalizing the resolution referred to in paragraph 18 above.

23. Debtor is in full compliance with the lease obligations and is not in breach thereof.

24. It in indispensable to Debtor's reorganization that the lease be assumed thereby and Debtor's performance thereunder is more than adequate assurance of Debtor's future performance.

25. Debtor wishes to assume the lease forthwith, under the provisions of 11 U.S.C. § 365.

In addition to the facts set forth in debtor's motion to assume executory contract, the court makes the following additional findings of fact:

26. On June 2, 2005, the Superior Court of Puerto Rico, Carolina Division, issued an opinion and order in a consolidated action by CPN, the Comité Vecinos de Isla Verde del Mar, Inc. ("Vecinos"), and the Municipality of Carolina against HR Properties, Inc.[2] The Superior Court held that the lease contract of March 11, 1996, between RDC, the Municipality of Carolina, Desarrollos Hoteleros and the Department of Natural Resources, as well as the endorsement agreement of October 19, 2001, between the Municipality of Carolina and HR Properties, Inc., are null and void.

_____

[2]Civil Num. FAC05-0513, Civil Num. F PE2005-0268, and Civil Num. F PE2005-0226, respectively.

AO 72
(Rev. 8/82)

## Discussion

Assumption of Lease

In the motion at issue herein, the debtor seeks to assume the lease of the property described in paragraph two above, which was leased by the debtor from the Municipality of Carolina pursuant to a lease agreement executed on March 11, 1996, an assignment of lease executed on August 9, 1999, and an assignment of lease executed on August 5, 2002.[3]  Accordingly, since the lease agreement is the only asset of the bankruptcy estate, its validity at the time of the filing of the petition is central not only to the controversy herein but to the debtor's reorganization in bankruptcy.

The Bankruptcy Code provides in section 365 that, subject to the court's approval, the trustee (debtor)[4] may assume or reject any executory contract or unexpired lease of the debtor.  11 U.S.C. § 365(a).  "Section 365 applies only if the contract or lease is in existence at the commencement of the case.  If the contract or lease ... has been terminated under applicable law before the commencement of the bankruptcy case, there is nothing left for the trustee to assume ...."  3 Lawrence P. King, et. al., Collier on Bankruptcy ¶ 365.02[2] (15th ed. rev'd 2005).  "However, the termination process must actually be completed and not be subject to reversal, a determination that will require reference to applicable state law."  Id.

_____

[3] As detailed in the enumerated findings of fact, the property was originally leased on March 11, 1996, by Desarrollos Hoteleros de Carolina, Inc., whose rights in and to the lease agreement were transferred on August 9, 1999, to Sunshine Isle Inn, LLC; the lease was then assigned to CH Properties, Inc., debtor herein, on August 5, 2002.

[4] "[A] debtor in possession shall have all the rights ... and shall perform all the functions and duties ... of a trustee serving in a case under this chapter."  11 U.S.C. § 1107(a).

8

AO 72
(Rev. 8/82)

<u>Decision by the Superior Court of Puerto Rico</u>

In its decision of June 5, 2005, the Superior Court of Puerto Rico held that the lease agreement executed on March 11, 1996, is null and void *ab initio*. The rationale underlying its finding is that the ninety-nine year length of the lease contract contravenes public policy and order because it results in the taking of public land for private use, and therefore violates provisions of the Civil Code of Puerto Rico, which stipulate that contracts cannot be contrary to "public order". The court noted that an essential element of a lease contract is that it be for a limited period of time, but the term of the lease at issue was for such a long period (fifty years extendable to ninety years), that it was essentially "for perpetuity". Further, the court found that the land at issue is the type that is in the public domain, because of its nature (beach), and because the commonwealth government has designated it for the use of the general population. The court concluded that such land cannot be alienated or transferred by the commonwealth government, its agencies or public corporations, nor can it be privately held or used for non-public purposes, such as the construction of the condo-hotel at issue herein.[5]

<u>The Rooker-Feldman Doctrine</u>

Pursuant to the Rooker-Feldman doctrine, federal district courts do not have jurisdiction over "federal complaints...[that] essentially invite[ ] federal courts of first instance to review and reverse unfavorable state-court judgments." <u>Exxon Mobil Corporation v. Saudi Basic Industries Corp.</u>, __ U.S.__, 125 S.Ct. 1517, 161 L.Ed.2d 454

---

[5]The court further noted that the lease contract contemplates the construction of 196 private suites, to be sold to individuals, which would result in the conversion of public land to private use and ownership.

9

(2005); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.ed.2d 206 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The rationale underlying the doctrine is that only the United States Supreme Court has jurisdiction over appeals from state courts[6]. 28 U.S.C. § 1257; Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, (1st. Cir. 2005).

In Exxon Mobil, the Supreme Court of the United States restated the confines of the *Rooker-Feldman* doctrine, the unanimous court concluding that:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commences and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

125 S. Ct. at 1521-1522. The Court explained the limited circumstances in which *Rooker-Feldman* applies and stated that "[i]n both cases, the losing party in state court filed suit in federal court after the state proceedings ended, ..." Id. at 1526. The Court recognized that "[c]omity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." Id. at 1527.

In Federación, the United States Court of Appeals for the First Circuit altered its

---

[6]Or the Supreme Court of Puerto Rico. 28 U.S.C. § 1258.

AO 72
(Rev. 8/82)

prior understanding of *Rooker-Feldman* after *Exxon Mobil*.  410 F.3d at 19, 21-24.  The court of appeals held in <u>Federación</u> that the Rooker-Feldaman doctrine applies only in the limited circumstances where the losing party files the action in federal court after the state proceedings have ended.  410 F.3d 24.  A state court judgment is sufficiently final for the application of the *Rooker-Feldman* doctrine when the state proceedings have ended; if the federal proceedings are begun before the state proceedings have ended then the doctrine does not deprive the federal court of jurisdiction.  <u>Id</u>. at 24, citing <u>Exxon</u>, 125 S.Ct. at 1526.

The court of appeals goes on to discuss three situations, or tests, to determine whether state proceedings have "ended".  410 F.3d at 24.  First, state proceedings have ended "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved".  <u>Id</u>.  That is not the case herein.  Second, state proceedings have ended "if the state action has reached a point where neither party seeks further action".  That is also not the case herein.  Third, state proceedings have ended, for purposes of the *Rooker-Feldman* doctrine, on the federal questions at issue, "if the state court proceedings have finally resolved all the federal questions in the litigation but state law or purely factual questions remain to be litigated".  This third situation is also not the case herein.

Pursuant to the laws of Puerto Rico, a judgment is a decision that resolves in final form the controversy before it so that an appeal may be taken. <u>U.S. Fire Insurance Co. v. Autoridad de Energia Electrica</u>, 151 D.P.R. 962 (2000). A judgment is final and firm (final y firme) when it is unappealable or subject to reconsideration. <u>Suarez Morales v.</u>

11

AO 72
(Rev. 8/82)

Estado Libre Asociado de Puerto Rico, 2004 WL 1245173 (P.R.), Bolivar v. Aldrey, 1907 WL 3991 (P.R.). In the case before the court, the state court proceedings have not ended, as the appealability of the Superior Court's decision was been interrupted by the filing of the bankruptcy petition and the automatic applicability of the stay provisions of 11 U.S.C. § 362(a).

This court concludes, based upon the tests set forth in Federación, that the *Rooker-Feldman* doctrine does not deprive this court of jurisdiction over this matter because commonwealth court proceedings have not "ended", and therefore the decision of the Superior Court is not "final".

Collateral Estoppel/Issue Preclusion

The doctrine of *res judicata* bars parties from litigating or re-litigating any issue or claim that has already been adjudicated in a prior case. Suarez Cestero v. Pagan Rosa, 198 F.Supp.2d 73, 84 (D.P.R. 2002). Issues surrounding the application of the doctrine of *res judicata* arise because of the exercise of concurrent jurisdiction by state and federal courts over similar claims based upon similar facts and involving the same parties. Id. "The doctrine of *res judicata*, now called claim preclusion, forecloses litigation of all matters which have been litigated or might have been litigated in an earlier case. The rule of collateral estoppel, now termed issue preclusion, precludes re-litigation of issues actually adjudicated." Id., citing 18 Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure: Jurisdiction, § 4402, 4404 (1981).

The preclusive effect of a state court judgment depends upon state law. Kane v. Town of Harpswell (In re Kane), 254 F.3d 325, 328 (1st Cir. 2001), citing Cruz v.

12

Melecio, 204 F.3d 14, 18 (1st Cir. 2000); *see also* <u>Suarez Cestero v. Pagan Rosa</u>, 198 F.Supp.2d at 85 ("[I]f Puerto Rico courts would give preclusive effect to the judgment of a state court, then this Court must also give preclusive effect to said judgment."). Additionally, whether a state court judgment is final for preclusion purposes (claim or issue) is a question of state law. <u>Federación</u>, 410 F.3d at 22 fn. 8, citing <u>Roy v. City of Augusta</u>, 712 F.2d 1517, 1520 (1st Cir. 1983)..

The general rule of issue preclusion applies in most jurisdictions even where the first (issue preclusive) judgment is still on appeal when the second action occurs. <u>Kane</u>, <u>id</u>. However, "[t]he purpose of issue preclusion doctrine is to prevent a party from re-litigating an issue where there has been full and fair litigation, including an opportunity to appeal; indeed, where an appeal on an issue is unavailable for reasons beyond the control of the losing party, preclusive effect may be denied." <u>Id</u>. at 329.[7]

"In Puerto Rico, judgments can be given preclusive effect if they are final and on the merits." <u>Suarez Cestero</u>, 198 F.Supp.2d at 85.  However, in Puerto Rico, no preclusive effect will be given the judgment until it becomes final on appeal. <u>Id</u>.; *see also*, <u>Cruz v. Melecio</u>, 204 F.3d 14, 20 (1st Cir. 2000) ("Under Puerto Rico law, claim preclusion requires a prior judgment on the merits that is, in the authoritative Spanish, "final y firme" (officially translated as "final and unappealable"). This phrase makes manifest that a commonwealth court judgment cannot be accorded preclusive effect until all available appeals have been exhausted (or the time for taking them has expired)."

---

[7]The court notes that in this case, appeal of the unfavorable decision by the losing party, the debtor, was not beyond that party's control; in fact, the appeal process was stayed by the losing party's actions - namely, the filing of the bankruptcy petition.

13

AO 72
(Rev. 8/82)

(Citations omitted.)).

"The idea that a judgment is not final until fully resolved on appeal is reinforced by the Puerto Rico Rules of Civil Procedure." Suarez Cestero, 198 F. Supp. 2d at 85. Rule 53.9 states that a judgment of a lower court is automatically stayed once it is appealed; "[t]herefore, a judgment is final during the pendency and until the resolution (and reconsideration) of an appeal has been dealt with by the court." Id. at 85. The district court goes on to refer to the *res judicata* provisions of Puerto Rico law, found in 31 L.P.R.A. § 3343 and states that it has been interpreted to include collateral estoppel/issue preclusion. (See also, Texaco Puerto Rico, Inc. v. Medina, 834 F.2d 242, 246 (1st Cir. 1987) ("Although the development of the doctrine of collateral estoppel by judgment in Puerto Rico has varied...this concept nevertheless has always been considered a variant of res judicata in which identity of causes is not necessary.") The Suarez court goes on to note that while the established federal rule is that a judgment has *res judicata* effect while it is pending on appeal, under Puerto Rico law "a judgment is not final during the pendency and until the resolution of an appeal." Id. at 86. It notes that the Puerto Rico Supreme Court has held that in order to have *res judicata* effect a judgment must be "final and unappealable." Id., citing Rivera v. Insurance Co. of Puerto Rico, 103 P.R. Dec. 91 (P.R. 1974); Sucesión De Pablo Zayas Berrios v. Berrios, 90 P.R. Dec. 551, 1964 WL 14300 (P.R. 1964).

This court concludes that it is not barred from addressing the issues herein by the doctrine of collateral estoppel or issue preclusion because the decision rendered by the Superior Court is not final and unappealable, any appeals thereof having been stayed by

14

AO 72
(Rev. 8/82)

the filing of debtor's bankruptcy petition.

Abstention

The federal courts have jurisdiction over bankruptcy cases pursuant to 28 U.S.C. § 1334, which provides in subsection (a) that the district courts have original and exclusive jurisdiction over "cases under title 11" (such as the bankruptcy petition itself), and in subsection (b) that the district courts have original but not exclusive jurisdiction over "proceedings arising under title 11, or arising in or related to cases under title 11".

Section 1334(c) provides for permissive abstention under § 1334(c)(1) and mandatory abstention under § 1334(c)(2). The statute distinguishes between cases "arising under", "arising in" and "related to" proceedings under title 11. "'Arising under' proceedings are those cases in which the cause of action is created by title 11." In re Middlesex Power Equipment & Marine, Inc., 292 F.3d 61, 68 (1st Cir. 2002). "'Arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." Id. (citation omitted). "'Related to' proceedings are those which potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankruptcy estate." Id. (citations omitted).

Proceedings which "arise in" and "arise under" title 11 together constitute the bankruptcy court's "core" jurisdiction. 28 U.S.C. § 157(b)(1); Concerto Software, Inc. v. Vitaquest International, Inc., 290 B.R. 448, 452 (D. Maine 2003). Subsection (b)(2) of § 157 sets forth a non-exclusive list of core proceedings, including "orders approving the

15

AO 72
(Rev. 8/82)

use or lease of property....." 28 U.S.C. § 157(b)(2)(M). The mandatory abstention provision of § 1334(c)(2) applies to cases "related to" proceedings under title 11, and provides that the district court should abstain from hearing a proceeding based upon a state law claim or state law cause of action, which is related to a case under title 11 but not arising under or arising in a case under title 11, if a state court action is pending and can be timely adjudicated. *See* Middlesex, 292 F.3d at 68, fn. 6. Since the issue herein, debtor's motion to assume the lease of the property, is included in § 157 as a "core" proceeding, the mandatory abstention provisions of § 1334(c)(2) do not apply to this issue. *See also*, In re Texaco Inc., 77 B.R. 433 (Bankr. S.D. N.Y. 1987) ("There is no question that proceedings to assume or reject executory contracts or unexpired leases are matters concerning the administration of the estate within the meaning of 28 U.S.C. § 157(b)(2)(A) and are core proceedings.")[8]

The discretionary abstention provision of § 1334(c)(1) provides that the district court may abstain from hearing a particular proceeding "arising under title 11 or arising in or related to a case under title 11" if to do so would be "in the interest of justice, or in the interest of comity with State courts or respect for State law". *See* Middlesex, 292 F.3d at 69 (citation omitted). In Middlesex, the First Circuit Court of Appeals observed that the bankruptcy court "took into account judicial economy and comity", "noted that the issues

---

[8]In Texaco, the court ultimately determined that it should not exercise discretionary abstention with respect to the debtor's attempt to assume an unexpired lease; however, underlying that conclusion was its finding that at the time of the filing of the bankruptcy petition, the lease was not yet terminated by the state court and thus was still in full force and effect. Therefore, Texaco is factually distinguishable from the case before this court, since the lease herein was found to be null and void by the commonwealth court before the filing of the bankruptcy petition.

16

AO 72
(Rev. 8/82)

between the parties had already been fully litigated in the [state] court", stated that the party moving the court "essentially ask this court to review a final judgment of the state court" and commented on "'avoidance of forum shopping' as a reason to defer to the [state] court." Id. The court of appeals went on to note that "[t]he statute itself delineates 'three...criteria to determine whether abstention is appropriate': the interests of justice, comity, and respect for state law." Id. (citation omitted). The court of appeals further stated that other circuits have considered certain factors in determining whether permissive (discretionary) abstention is appropriate, including the extent to which state law issues predominate over bankruptcy issues, the presence of a related proceeding commenced in state court, and the likelihood that the commencement of the bankruptcy proceeding involves forum shopping. Id. See also, Texaco, 77 B.R. at 437 ("Manifestly, bankruptcy courts should be guided by principles of comity to respect a pending unresolved state law suit and should not exercise federal judicial authority in the disregard of the comity between the state courts and the federal courts.")

In Cruz v. Melecio, 204 F.3d at 23, the First Circuit Court of Appeals observed that the abstention doctrines are "concepts that reflect 'a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes.'" (citations omitted). The court found that the presence of several factors led it to conclude that a stay of federal proceedings was appropriate until the proceedings pending before the courts of the Commonwealth of Puerto Rico had "run their course", including that the commonwealth proceedings were filed first and have progressed further, and that the fact that the appellants waited to file suit in federal court after the

17

AO 72
(Rev. 8/82)

Puerto Rico Court of First Instance had entered final judgment adverse to their interests "raises the discomfiting specter of forum-shopping". Id. at 24.[9]

The court finds that it is appropriate for it to exercise discretionary abstention in this matter. The Commonwealth Superior Court issued a judgment prior to the filing of the bankruptcy petition, finding the lease contract which debtor proposes to assume to be null and void. As stated by the Supreme Court in Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940):

> A court of bankruptcy has an exclusive and nondelegable control over the administration of an estate in its possession. But the proper exercise of that control may, where the interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to State courts of particular controversies involving unsettled questions of State property law and arising in the course of bankruptcy administration.

60 S.Ct. at 630.

The Superior Court of Puerto Rico in its decision stated that "the interests of the People of Puerto Rico over their patrimonial assets cannot cease under any economic interest."[10] Clearly, this is a case and a decision imbued with public policy considerations on how the Government of Puerto Rico, through its agencies and officials, may dispose of property which is of public domain. This court will not review the decision of the Superior Court; any said review is more properly conducted within the appellate court

---

[9]Compare Flores Rivera v. Telemundo Group, 133 B.R. 674, 677 (D.P.R. 1991), wherein the district court held that discretionary abstention was not warranted because there was no parallel state action (and therefore no issue of comity with the state court) and because the issues of law were not novel, complex or unsettled.

[10]See certified translation submitted by CPN on January 3, 2006 (dkt. # 74).

18

system of the Commonwealth of Puerto Rico.

## Conclusion

This court finds that the decision of the Superior Court of Puerto Rico, holding that the debtor lease contract is null and void, is not "final and firm" pursuant to the laws of the Commonwealth of Puerto Rico and the jurisprudence of the Supreme Court of Puerto Rico, because the appeal process of said Superior Court decision was stayed by the filing of debtor's bankruptcy petition.  Accordingly, this court is not precluded from addressing the debtor's request to assume the lease contract by  the Rooker-Feldman doctrine nor is it bound by the decision of the Superior Court pursuant to the doctrine of collateral estoppel.

However, in the interest of judicial economy, and in comity with the courts of the Commonwealth of Puerto Rico, this court will discretionarily abstain from addressing the validity of the lease contract, the issue at the heart of debtor's request to assume the lease contract.  The parties may pursue whatever remedies they deem appropriate before the courts of the Commonwealth of Puerto Rico.

SO ORDERED.

In San Juan, Puerto Rico, this 12th day of January, 2006.

_____
ENRIQUE S. LAMOUTTE
United States Bankruptcy Judge

19

AO 72
(Rev. 8/82)